IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ANIBAL CANALES, JR., § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 2:03CV69 |
| § | (U.S. Dist. Judge Rodney Gilstrap) |
| RICK THALER, Director, Texas § | Death Penalty Case |
| Department of Criminal Justice, § | Filed under seal |
| Correctional Institutions Division, § | |
| Respondent. § | |

**RESPONDENT THALER'S OBJECTIONS TO THE SEALED
REPORT AND RECOMMENDATION OF THE UNITED STATES
MAGISTRATE JUDGE**

Canales, convicted in a Texas court of capital murder and sentenced to death, seeks habeas corpus relief. *See* 28 U.S.C.§ 2254 (West 2012). This Court on June 15, 2012, issued its Sealed Report and Recommendation of the United States Magistrate Judge (ECF No. 139) in which the magistrate judge recommended denying relief. The Director does not object to the magistrate's ultimate recommendation. The Director does, however, object to certain factual assertions and legal conclusions.

I. **The Director Does Not Admit that the Relationship Between Innes and Prison-Security Personnel Was Withheld from the Defense.**

In the Report and Recommendation, the magistrate judge said:

Canales claims that information establishing that Innes was asked by the state to solicit inculpatory information from him after he was indicted for murdering Dickerson was contained in a file kept by an investigator for the prosecution, which was not produced

>to the defense at trial, on direct appeal, or during state post-conviction proceedings. *The Director does not dispute this allegation*, so Canales has established cause for failing to timely present this claim to the state courts.

(ECF No. 139 at 14; italics added.)

Although copies of documents relating to Innes's involvement with prison-security personnel were seen and discussed by the parties in postconviction discovery, the Director does not acknowledge that copies of those documents were not available to the defense before trial or that copies of the documents were withheld from the defense before trial. And the Director does not acknowledge that the relationship between Innes and prison-security personnel was withheld from the defense before trial or that the relationship could not have been discovered by the defense had the defense used reasonable diligence. As stated in his original answer, "Except for those allegations supported by the record and those admitted herein, the Director denies every allegation of fact made by Canales." (ECF No. 12 at 1.) The Director does not admit the allegation that the relationship between Innes and prison security personnel was not disclosed before trial.

II. **The Record Does Not Show That the State Sought Innes's Assistance Before March 1, 2000.**

The magistrate found that Innes was acting as a state agent before he received an incriminating letter from Canales in February 2000. (ECF No. 12

at 15.) The record before this Court shows that a State investigator in a letter dated March 1, 2000, asked Innes to solicit letters from Canales. The magistrate places the existence of the agency relationship between Innes and prison security personnel earlier. The magistrate relies upon a memorandum dated September 3, 1999, from a member of the security threat group of the Telford unit. That memo says Innes "claims that the Special prosecutor's office has instructed him to keep in contact with" members of Innes's former gang "(for purposes concerning the homicide.)" (ECF No. 139 at 15.) For the existence of an agency relationship, it is not enough that Innes allege a relationship. The prison-security personnel must agree. Otherwise, Innes would have been operating freelance. It would have been in Innes's interest to claim falsely to security threat group personnel that such a relationship existed. The first reliable evidence that such a relationship existed arose on March 1, 2000, with the letter from the Special Prosecution Unit investigator. Hence, the Director would argue that the evidence shows that Innes was a state agent beginning March 1, 2000.

III.  Claim 4 Was Defaulted.

In connection with Claim 4, a claim based upon *Brady v. Maryland*, 373 U.S. 83 (1963), the magistrate determined that in dismissing the claim the Court of Criminal Appeals relied upon state-law grounds, that is, untimeliness

under section 5(a)(1) of the Code of Criminal Procedure. (ECF No. 139 at 20.) The magistrate then addressed the issue of whether Canales showed cause and prejudice sufficient to avoid the state-law default. (ECF No. 139 at 20–24.) The magistrate noted that the cause-and-prejudice analysis matched the substantive *Brady* analysis. (ECF No. 139 at 20, *citing Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).) The magistrate determined that evidence at issue was not, for *Brady* purposes, material. (ECF No. 139 at 25.) The magistrate determined that because the evidence was not material the fourth claim should be "denied."

A denial would suggest that the magistrate rejected the claim on the merits. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000) ("Determining whether a COA should issue where the petition was *dismissed on procedural grounds* has two components . . . ."); *Berkley v. Quarterman*, 507 F. Supp. 2d 692, 752 (W.D. Tex. 2007) (referring to a claim's non-constitutional rejection as a " dismissal"). The Director would argue, rather, that the magistrate used the *Brady*-style analysis to determine whether Canales showed cause and prejudice sufficient to avoid state-law default. Because Canales, by failing to meet the *Brady* requirements, did not show cause and prejudice sufficient to avoid state-law default, the fourth claim is defaulted. The Director argues that the magistrate, rather than denying the claim, suggesting a merits review, instead

should have dismissed the claim, indicating that the magistrate rejected the claim on non-constitutional grounds.

### IV. For *Brady* Purposes, Benefits-Received Analysis Regarding Prisoners Differs from Similar Analysis Regarding Free-World Witnesses.

Regarding the allegation that inmates received benefits for their testimony, the magistrate said:

> Regarding the third and eighth contentions, the testimony of the investigator and prosecuting attorney was that they tried to help inmates with their general requests by passing them along to the officials who could grant them, while mentioning that those inmates had cooperated with them. They did not consider this a benefit in exchange for testimony, but rather simply being fair and decent. As a result, they believed that inmates could testify truthfully that they had not received benefits as a result of agreeing to testify, and that any records of the inmate requests and their own vouching for the inmate's cooperation need not be disclosed to the defense under *Brady*.
>
> *While the investigator and prosecuting attorney are incorrect*, in this case their general approach did not constitute a temptation sufficiently strong to objectively undermine the credibility of the inmate testimony.

(ECF No. 139 at 23; italics added; citations omitted.)

The Director would argue that the understanding of the investigator and the prosecutor was correct. For *Brady* purposes the issue of benefits received by a prisoner in exchange for testimony cannot be analyzed as if the testimony arose from a free-world witness. With a prisoner, the state is responsible not only for the roof over his head, but for every bite of food, every stitch of clothing,

5

and every drop of medicine. The state also is responsible for his physical safety. In a large sense, the state is responsible for the prisoner's every necessary. Where a prisoner, especially a member of a prison gang, agrees to cooperate with prison-security personnel, the State should be allowed to take steps to ensure the prisoner's safety without those steps being construed as a benefit. Indeed, under the Constitution, such steps may well be required.

Also, although the "State" is sometimes seen as monolithic, different agencies have different authority and responsibility. Here, the prosecutor and the investigator with the Special Prosecution Unit had no control over prison security. For the security of the inmate witnesses, the prosecutor and investigator could at best pass along to prison authorities the requests of the inmate witnesses. The prison personnel had sole authority and responsibility for prisoner housing and prisoner security. Decisions about housing assignments likely were made with consideration of a wide range of interests, from prison security to budget restraints. The passing along of prisoner requests should not, for *Brady* purposes, be viewed as a benefit.

### V. Canales's Constitutional Shackle-Related Claim Was Not Fairly Presented to the State Courts.

The magistrate determined that Canales's shackling-related due process claim, Claim 9, had been exhausted. The Director disagrees. Canales presented

his shackling-related claim in state court not as a constitutional claim but as a state-law claim. (ECF No. 12 at 49–51.) The due process claim was unexhausted but nonetheless defaulted. *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

## VI. Wrongfully Obtained Evidence Need Not Be Excluded at Punishment.

The magistrate determined that inmate Bruce Innes was acting as a state agent when he gathered information about a planned gang-related hit on inmate Larry Whited. The issue of Innes's agency relationship is discussed above, and the Director argues that when Innes gathered the information, no such relationship existed. Nonetheless, were one to assume that such a relationship existed when Innes gathered the hit-related information, the magistrate, relying upon *Wesbrook v. Thaler*, 585 F.3d 245, 255–56 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1889 (2010), determined that the use of the hit-related information at the punishment phase of Canales's trial violated Canales's Sixth Amendment right to counsel. Its use was, nonetheless, harmless. (ECF 139 at 19.)

While this Court may determine that it is bound by *Wesbrook*, the Director would note that a prior case has determined that the exclusionary rule does not bar the introduction of wrongfully obtained evidence at the sentencing. *See United States v. Montoya-Ortiz*, 7 F.3d 1171, 1181 (5th Cir. 1993) ("Our

court recently held that '[t]he exclusionary rule applicable to Fourth Amendment violations is generally inapplicable to the district court's consideration of evidence for purposes of sentencing.'"); *see also United States v. Bender*, 221 F.3d 265, 271 (1st Cir. 2000) (noting that evidence obtained in violation of Sixth Amendment may be used nonetheless for impeachment if defendant testifies and may be used at sentencing). This line of cases would suggest that the admission of the hit-related evidence as punishment was not erroneous.

## CONCLUSION

The Director raises these objections for purposes of district court review and appeal. The Director does not object to the magistrate's ultimate recommendation that relief be denied.

    Respectfully submitted,

    GREG ABBOTT
    Attorney General of Texas

    DANIEL T. HODGE
    First Assistant Attorney General

    DON CLEMMER
    Deputy Attorney General
    for Criminal Justice

    EDWARD L. MARSHALL
    Chief, Postconviction Litigation Division

      /s/ Thomas M. Jones
THOMAS M. JONES*
*Attorney-In-Charge
Assistant Attorney General
Postconviction Litigation Division
State Bar No. 00784357

P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
Fax No. (512) 936-1280
E-mail:
Thomas.Jones@texasattorneygeneral.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF AUTHORIZATION

The parties have the authorization from the Court (Docket Entry No. 108) to file under seal Respondent Thaler's Response to Petitioner's Supplement to Petition for Writ of Habeas Corpus with Brief in Support.

      /s/ Thomas M. Jones
THOMAS M. JONES
Assistant Attorney General

## CERTIFICATE OF SERVICE

I do hereby certify that on July 30, 2012, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case-filing system of the Court. Because the document was filed under seal, the electronic case-filing system did not send a "Notice of Electronic Filing" to the attorneys of record. Instead, I certify that I served copies of the preceding document upon the following attorneys of record by email:

Counsel for Canales:

Teresa L. Norris
South Carolina Bar No. 15081
Blume Norris & Franklin-Best, LLC
900 Elmwood Ave., Suite 101
Columbia SC 29201
email: teresa@blumelaw.com David Paul Voisin

David P. Voisin PLLC
P.O. Box 13984
Jackson MS 39236
email: davidvoisin@comcast.net

        /s/ Thomas M. Jones
        THOMAS M. JONES
        Assistant Attorney General
        Postconviction Litigation Division