**APPLICATION NO. 99F506-5-A**

(Trial Court No. 99F506-5)
(Texas Court of Criminal Appeals No. 73,988)

IN THE 5th DISTRICT COURT
OF BOWIE COUNTY, TEXAS

COPY
FILED FOR RECORD
02 MAY 16 AM 11:54
BILLY FOX
DIST. CLERK, BOWIE COUNTY, TX
BY_____ DEPUTY

---

**EX PARTE ANIBAL CANALES**
Applicant

vs.

**THE STATE OF TEXAS**

---

First Application for Writ of Habeas Corpus from a Capital Murder Conviction in the 5th District Court of Bowie County, Texas, Cause number 99F506-5

---

**FIRST APPLICATION FOR WRIT OF HABEAS CORPUS**

---

Troy Hornsby

*Miller, James, Miller & Hornsby, L.L.P.*
1012 Olive - Post Office Box 2044
Texarkana, Texas 75504-2044
(903) 794-2711, fax (903) 792-1276

ATTORNEY FOR THE APPLICANT
ANIBAL CANALES

Defendant's tattoo did not violate the Fifth Amendment, but Appellant in our case also objected to relevance under Texas Rule of Evidence 403. Appellant asserts that the probative value of forcing him to partially disrobe and show a tattoo he may have substantially outweighed by the danger of unfair prejudice.

**ISSUE 34 (8):** **The trial court erred in failing to sustain Appellant's objection to Appellant being present in court while wearing leg shackles.**

Before the jury entered the courtroom to begin the punishment phase, the following took place:

MR. HARRELSON: Your Honor, as a side issue, I would just like to advise the Court that Mr. Canales is wearing leg irons, is that going to be necessary. (RR Vol. 12 at 3)

JUDGE CARTER; You know, it seems like that would be fine as long as he's under that desk there. I don't think it would be noticeable by the jury.

MR. HARRELSON: I am just afraid the clinking noise down here will be heard by the jury, and prejudice them in this phase of the trial.

JUDGE CARTER: Well, I've authorized that today. He's behind the desk and shouldn't be seen by the jury, and as far as I am concerned he will have to enter a plea to the enhancements, but you don't have to stand, Mr. Canales, unless you want to. You can just say, you know, your plea.

MR. HARRELSON: Okay. Thank you, Your Honor. (RR Vol. 12 at 4)

---

In <u>Gammage v. State</u>, the Defendant was tried for attempted capital murder and the 4th Court of Appeals held that the trial court abused its discretion in trying Defendant in handcuffs before the jury, in absence of a specific finding of manifest need for the physical restraint and in view of fact that less drastic security measures would have adequately and reasonably addressed any alleged problem." 630 S.W.2d 309 (Tex. App.-San Antonio, 1982)

Although Appellant cannot state with certainty that any juror knew or had reason to believe that Mr. Canales was wearing leg shackles during that portion of the proceedings, the possibility that a juror saw or heard the shackles unfairly prejudices Appellant, especially since the jury was deciding whether Appellant would constitute a "future danger". The fact that Appellant had not worn leg shackles in court before that day is proof that less drastic security measures would have adequately and reasonably addressed any alleged problem. No problem or alleged threat of violence or escape was ever brought to the attention of Appellant's attorneys or to the trial Court.

<u>Gammage</u> also cites <u>Illinois v. Allen</u> for the proposition that "physical restraints on an accused tend to prejudice the jury against the accused and suggest to the jury that the trial judge, by ordering or permitting the use of such restraints, has thereby expressed the opinion that the accused is a dangerous person and is not to be trusted." 397 U.S.

94

337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)   Therefore, because of the danger that a juror saw or heard the leg shackles during that phase of the trial, this Court should find that the trial court abused its discretion and unfairly prejudiced Appellant.

ISSUE 35 (9):   **The trial court erred in failing to grant Appellant's motion for mistrial after prosecutor repeatedly offered document for admission, when prosecutor had not laid proper foundation, forcing Appellant's counsel to repeatedly object, resulting in prejudice to Appellant.**

During the testimony of Charles Parker, the State directly examined him as follows:

MR. MULLIN: Alright. When you compared State's Exhibit 23-A with the letter in State's Exhibit 25, did the prints from Anibal Canales match the latent print that you found on State's Exhibit 25? (RR Vol. 9 at 258)

MR. PARKER: Yes, there was one latent print that was identified with the right index of Anibal Canales.

MR. MULLIN: Alright. Show me if you would, on what portion of State's Exhibit 25, did you find the latent print?

MR. PARKER: Well, there are eight latent prints on this document that were developed. Only two of them are suitable for identification purposes. That means they have enough characteristics, and the quality sufficient enough for me to make determination as to their source. The one that is identified is on the back side. It's in the

95