## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| ANIBAL CANALES, JR, | PETITIONER |
| v. | Case No. 2:03-CV-69-JRG-RSP |
| LORIE DAVIS, Director,<br>Texas Department of Corrections,<br>Correctional Institutions Division, | RESPONDENT |

### OPPOSED SECOND APPLICATION FOR EXPERT ASSISTANCE PURSUANT TO 18 U.S.C. § 3599(f)

Petitioner Anibal Canales, Jr., a death-sentenced inmate, requests this Court, pursuant to 18 U.S.C. § 3599(f) and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, to authorize court-appointed counsel to expend additional funds for mitigation specialist/investigator Susana Herrero and for funds for a neuropsychologist to assess Petitioner's neurological functioning. This request will allow Petitioner to have a reliable mental health assessment and fully develop and present the evidence in support of a showing of prejudice due to trial and state habeas counsels' failure to prepare and present mitigation in sentencing. Petitioner incorporates by reference his discussion of the procedural history of the case and background for the original funding request set forth in his prior application. *See* Dkt 179. Petitioner submits the following additional facts and argument in support of this application.

**I.    Introduction.**

In *McFarland v. Scott*, 512 U.S. 849, 858 (1994), the United States Supreme Court recognized that "the right to counsel [in federal habeas corpus proceedings] necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims." The

Court further recognized that the "services of investigators and other experts may be critical." 512 U.S. at 855. *See also Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) (citations omitted) ("fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system").

In order to effectuate these basic principles, this Court may authorize investigative, expert, or other services that "are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence." 18 U.S.C. § 3599(f). The United States Court of Appeals for the Fifth Circuit has "construed 'reasonably necessary' to mean that a petitioner must demonstrate 'a substantial need' for the requested assistance." *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004)).

This Court previously authorized Petitioner to expend $7,500 for mitigation investigator Susana Herrero and to expend $7,500 for psychiatrist Donna Schwartz-Watts (now Schwartz-Maddox), M.D. (Dkt 186 and 187). Ms. Herrero has used virtually all of the funds originally allotted for her, but she has not been able to complete her investigation. She estimates that she will require, at minimum, an additional $15,000 in fees to interview additional social history witnesses and seek to obtain additional records. In addition, based on Ms. Herrero's investigation to date and consultation with Dr. Maddox based on what has been learned, Petitioner has determined that he also requires the services of a neuropsychologist to determine whether he suffers from neurological dysfunction and the extent to which any dysfunction affected his development and behavior.

## II. Relevant Procedural History and Relevant Facts.

After finding the Petitioner overcame any alleged procedural default due to the ineffective assistance of state habeas counsel, the Fifth Circuit asked this Court "to consider whether Canales can prove prejudice as a result of his trial counsel's deficient performance, and if so, to address the merits of his habeas petition on this claim." *Canales v. Stephens,* 765 F.3d 551, 571 (5th Cir. 2014).

The Court of Appeals also noted that the District Court did not reach the merits of this claim previously and that "Canales has not yet had the chance to develop the factual basis for this claim because, until *Trevino*, it was procedurally defaulted." *Id. See also Woods v. Sinclair*, 764 F.3d 1109, 1138 (9th Cir. 2014) (if defaulted claim is excused by *Martinez*, habeas petitioner may seek to expand record and obtain hearing in district court). Based on these considerations, the panel remanded the case to this Court

## III. The Need for Investigative and Expert Resources.

### A. Petitioner Requires Additional Funding for a Mitigation Investigator.

Under the standards of *Strickland v. Washington,* 466 U.S. 668 (1984), in order to obtain relief on his claim of ineffective assistance of counsel, petitioner must establish both that his attorney's representation "fell below an objective standard of reasonableness," 466 U.S. at 688, and that the petitioner was "prejudiced" by his attorney's substandard performance, *id.* at 692.

An investigation into mitigating evidence "should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.I(C), p. 93 (1989)) (emphasis added).

This Court has already authorized Petitioner to expend up to $7,500 for the services of mitigation investigator, Susana Herrero. Ms. Herrero has billed nearly that amount for her services. She has been able to interview Mr. Canales on four occasions, and she has traveled to West Texas to interview witnesses who have never been interviewed previously.[1] At this point, the mitigation investigation and social history remains incomplete. In her first declaration attached to this motion, Ms. Herrero describes the additional work to be done for the mitigation investigation. *See* Exhibit 1. She has identified childhood friends and additional family members to interview and must contact other family members who have not been contacted since 2004. In addition, she must interview prisoners who have been incarcerated with Mr. Canales. Petitioner has been incarcerated for nearly half of his adult life and has been identified as a gang member. It is critical to learn about the gang culture and factors that may have influenced him at the time of the offense and to obtain mitigating information from other prisoners. *See, e.g., Harlow v. Murphy,* 2008 U.S. Dist. LEXIS 124288 (D. Wyo. Feb. 15, 2008). Ms. Herrero cannot estimate how much time it will take to complete everything, but believes that she can accomplish many of the tasks and provide a budget for completing the investigation if she can spend approximately 150 hours on these matters. At her rate of $100 per hour, her estimate fees total $15,000.

### B.    A Neuropsychologist.

Based on the investigation that Ms. Herrero has done, and based on Dr. Maddox's review of the available information, Petitioner believes that he requires a neuropsychological evaluation. Such an evaluation will determine the extent of any neurological dysfunction and provide an

---

[1] As Petitioner noted in his first Application for Funds (Dkt 179), prior federal habeas counsel relied on law students and were only able to interview a relatively small number of family members, including several on his mother's side of the family.

explanation as to how any brain abnormalities adversely affected his development and behavior. Moreover, Dr. Maddox believes that given Mr. Canales' history, a neuropsychological evaluation is essential for her psychiatric assessment.

In a second declaration prepared for this motion, Ms. Herrero identifies a number of factors indicating that Petitioner suffers from neurological problems. *See* Exhibit 2 (Declaration of Susan Herrero). For instance, Petitioner's mother was a known heavy abuser of alcohol before and during pregnancy, which could have impacted Petitioner's development even in utero. Likewise, as a child and teenager, Petitioner lived in an impoverished, chaotic, violent, and abusive environment, and used substantial amounts of drugs and alcohol even at an early age, all of which could impair brain development. Exhibit 2, ¶¶ 3-6.

Ms. Herrero also highlights portions of Mr. Canales' education records that indicate that he has difficulty with cognitive functioning. As she notes, school records "show a decline in academic progress over time and indicate severe learning problems in elementary and middle school." *Id.* at ¶ 7. When he was 14 years old, he was placed in 7th grade special education classes for "B.D." or Behavior Disordered. *Id.* He withdrew from school when he was 15 years old even though he was placed in Resource Classrooms for several subjects. *Id.* at ¶ 8. Moreover, Mr. Canales scored poorly on standardized testing. For instance, his Reasoning and Composite scores on a Primary Mental Abilities test fell with the Intellectual Disability (bottom 2 %) range. *Id.* at ¶ 9. *See also id.* at ¶ 10 noting that at age 15 his language score was 11% and his mathematics score was 1%.

Because Mr. Canales has a number of risk factors for neurological dysfunction and because his academic records also indicate cognitive and behavioral problems, Ms. Herrero

5

recommends that he undergo a neuropsychological assessment to determine the extent of the problems with his brain functioning and how those abnormalities affected his development and behavior.

Dr. Maddox also recommends that Mr. Canales undergo a neuropsychological assessment and believes that such an assessment is essential if she is to complete a reliable psychiatric assessment. Exhibit 3 (declaration of Donna Schwartz Maddox, M.D.). Although she has not yet visited Mr. Canales, she has reviewed materials in the record and is familiar with the results of the investigation that Ms. Herrero has undertaken thus far. As Dr. Maddox explains in her declaration, she believes that Mr. Canales has a number of significant factors that raise a significant likelihood that he suffers from neurological problems. His mother's prenatal alcohol and drug use may have caused developmental and cognitive problems. Furthermore, the trauma and violence that he experienced in his childhood also increased the risk that he developed neurological problems. In addition, there are indications that there may be mental illness in Mr. Canales' family, which would also enhance the risk of him having neurological deficits.

As a psychiatrist, Dr. Maddox is not trained to administer the types of testing that would show whether Mr. Canales suffers from neurological deficits. With the assistance of a qualified neuropsychologist, Dr. Maddox can determine whether Mr. Canales has a neurological problem in addition to any psychiatric issues.

It is essential that Petitioner be allowed to develop evidence of neurological problems. As the Supreme Court has found, trial counsel may be ineffective for ignoring "red flags" pointing to the need for neurological testing that reveal organic brain damage impairing the defendant's cognitive abilities. *Rompilla v. Beard,* 545 U.S. 374, 392 (2005). *See also Sears v.*

*Upton*, 130 S. Ct. 3259 (2010) (sentence reversed due to failure to present evidence of deficits in cognition and reasoning, head injuries, and drug and alcohol abuse); *Frazier v. Huffman*, 343 F.3d 780, 794-96 (6th Cir. 2003) (counsel ineffective for failing to present evidence of brain injury and lack of impulse control that reasonably resulted from it); *Ferrell v. Hall*, 640 F.3d 1199, 1226-34 (11th Cir. 2011) (counsel deficient for ignoring defendant's history of seizures and head injuries that would have led to mitigating evidence); *Anderson v. Sirmons*, 476 F.3d 1131, 1144 (10th Cir. 2007) (counsel deficient for not identifying readily available information that defendant suffered numerous head injuries and organic brain dysfunction); *Lockett v. Anderson*, 230 F.3d 695, 712-15 (5th Cir. 2000) (counsel deficient for not properly investigating and conducting necessary medical tests to evaluate defendant's brain injury).

Evidence of brain damage "is just the kind of mitigation evidence trial counsel is obligated to investigate and develop as part of building an effective case in mitigation during the penalty phase of a trial." *Anderson*, 476 F.3d at 1144. This is so because evidence of cognitive impairments significantly diminishes a defendant's moral culpability, and "is exactly the sort of evidence that garners the most sympathy from jurors." *Id.* at 1147-48 (quoting *Smith v. Mullin*, 379 F.3d 919, 942 (10th Cir. 2004)).

Based on the recommendations of Dr. Maddox and Ms. Herrero for neuropsychological testing, Petitioner asks the Court to permit him to expend up to $7,500, plus necessary expenses, to retain the services of Tora Brawley, Ph.D.  Dr. Brawley has experience in numerous state and federal courts throughout the country in evaluating death-sentenced inmates for mitigation.  Her detailed curriculum vitae is attached as Exhibit 4.  Undersigned counsel has previously retained Dr. Brawley on numerous cases and found her work to be thorough and exceptional.

7

### III. Conclusion.

For the reasons stated above, Petitioner's counsel request that this Court allow the undersigned counsel to expend an additional $15,000 for the investigative services of Susan Herrero and $7,500 plus necessary expenses for Tora Brawley, Ph.D.

Respectfully submitted on July 1, 2016.

| | |
|---|---|
| /s TERESA L. NORRIS | /s DAVID P. VOISIN |
| Teresa L. Norris | David P. Voisin |
| Blume Norris & Franklin-Best, LLC | P.O. Box 13984 |
| 900 Elmwood Ave., Ste. 200 | Jackson, MS 39236 |
| Columbia SC 29201 | (601) 949-9486 |
| (803) 765-1044 | david@dvoisinlaw.com |
| teresa@blumelaw.com | |

### CERTIFICATE OF SERVICE

I certify that I have served the foregoing Motion via the Court's ECF system on Counsel for Respondents:

This the 1st day of July 2016.

/ s Teresa L. Norris

### . CERTIFICATE OF CONFERENCE

I hereby certify that on July 1, 2016, I communicated via email with Assistant Attorney General Tina Miranda to see if she objected to this motion. She objects to this motion.

/s David P. Voisin